666 So.2d 1333 (1996)
Ovis MASTERS, Plaintiff-Appellant,
v.
Dr. Thomas FIELDS, Defendant-Appellee.
Ovis MASTERS, Plaintiff-Appellant,
v.
Bruce GOLSON, M.D., Radiology Associates, J. Michael Barraza, M.D., Thomas Fields, M.D., and St. Francis Medical Center, Defendants-Appellees.
Nos. 27924-CA, 27925-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
*1334 Oscar L. Shonenfelt, III, Baton Rouge, for Appellant.
Bruce M. Mintz, Jesse D. McDonald, Monroe, for Appellees.
Before WILLIAMS, STEWART, JJ., and CLARK, J. Pro Tem.
CLARK, Judge Pro Tem.
This is a medical malpractice action filed by Ovis Masters against Dr. Thomas Fields, Dr. Bruce Golson, Dr. J. Michael Barraza, Radiology Associates, Inc., and St. Francis Medical Center. Dr. Golson, St. Francis Medical Center, and Radiology Associates filed exceptions of prescription. After a hearing, the trial court ruled in favor of these defendants and dismissed plaintiff's claims. Plaintiff appeals. For the following reasons, we affirm.

FACTS
In February 1988, plaintiff, Ovis Masters, developed a problem with her ears and voice. On or about March 4, 1988, she visited Dr. Fields, an ear, nose and throat specialist, and he performed a routine examination. On December 4, 1989, during a subsequent office visit, Dr. Fields noticed Mrs. Masters' left vocal cord was paralyzed and sent her to St. Francis Medical Center for a chest x-ray.
Dr. Bruce Golson, a radiologist employed by Radiology Associates which performed radiological services at St. Francis Medical Center, evaluated the x-ray. He reported that the left vocal cord did not work. He also interpreted the x-ray as "demonstrating no acute process."
On January 2, 1990, a CT scan was performed on Mrs. Masters' neck pursuant to Dr. Fields' orders. Dr. Golson evaluated the CT scan and reported that he observed no abnormal masses. He did note an apparent paralysis of Masters' left vocal cord but stated the study was otherwise negative. After that, Dr. Fields continued treating Masters' problems, which continued to worsen, until her final visit on July 27, 1992.
On August 6, 1992, Mrs. Masters collapsed and was treated in an emergency room. She was hospitalized at Hardtner Medical Center until August 13, 1992. Some time between August 1992 and October 1992, she was evaluated and diagnosed as having a glomus tumor, which extended down her internal jugular vein to the C-3 level and to the junction of her lateral sinus.
On October 28, 1992, Dr. Gale Gardner, a surgical specialist, removed the tumor. Following the surgical procedure, Mrs. Masters remained hospitalized in the intensive care unit and then, under the care of Dr. Gardner, in a hospital in Memphis, Tennessee.
*1335 In May 1993, Mrs. Masters contacted an attorney and sought copies of her medical records. On July 19, 1993, she filed a complaint against Dr. Thomas Fields, and on October 26, 1993, she filed an amended complaint, adding as defendants Dr. Bruce Golson, Dr. Barraza, Radiology Associates, and St. Francis Medical Center.
Prior to this matter being submitted to a Medical Review Panel pursuant to LSA-R.S. 40:1299.41 et seq., Dr. Bruce Golson, St. Francis Medical Center, and Radiology Associates filed exceptions of prescription pursuant to LSA-R.S. 40:1299.47(B)(2). They contended that Masters failed to file suit against Dr. Golson within three years of the date of his alleged malpractice and that her action is prescribed under both the one and three-year time limitations set forth in LSA-R.S. 9:5628.
After a hearing, the trial court ruled in favor of the defendants, sustaining their exception of prescription and signing a judgment dismissing plaintiff's claims with prejudice and without the right to amend.[1]

PRESCRIPTION
The sole issue presented on appeal is whether the trial court properly granted the defendants' exception of prescription.
Generally, the burden of proving that a cause of action has prescribed rests with the party pleading prescription; however, when the plaintiff's petition shows on its face that the prescriptive period has run, and he is contending there is a suspension or interruption of prescription, the burden is on him to prove suspension or interruption. Burdeaux v. Cline, 626 So.2d 1205 (La.App. 2d Cir.1993), writ denied 634 So.2d 833 (La. 2/11/94).
LSA-R.S. 9:5628 governs prescriptive periods applicable to medical malpractice actions. The statute provides both prescriptive and preemptive periods. Whitnell v. Menville, 540 So.2d 304 (La.1989), on remand 592 So.2d 429 (La.App. 4th Cir.1991). It states that such actions must be filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect. In any event, even as to claims filed within one year from the date of such discovery, such claims must be filed, at the latest, within a period of three years from the date of the alleged act, omission, or neglect.
In the present case, the "alleged act, omission, or neglect" identified in Masters' petition is Dr. Golson's failure to correctly interpret the CT scan of January 2, 1990. Thus, based on the face of her petition, under LSA-R.S. 9:5628(A) she had until January 2, 1993, at the latest, and in all events, to file her suit. Considering she filed this suit in October 1993, outside of the preemptive period set forth in LSA-R.S. 9:5628, she had the burden of proving interruption or suspension of prescription.
Plaintiff sets forth three specifications of error in support of her contention that the trial court erred in sustaining the exception of prescription. We address each of the plaintiff's arguments separately. The standard of review which we must apply in examining the factual conclusions of the trial court is the manifest errorclearly wrong standard as articulated in Stobart v. State, Through Dept. Of Transportation and Development, 617 So.2d 880 (La.1993).

A. Contra Non Valentem

Plaintiff first contends the trial court erred in failing to apply the doctrine of contra non valentem in the present case. Plaintiff alleges that Dr. Golson prevented her from bringing this action within the prescriptive period because his misdiagnosis, which ultimately led to surgery and a long recovery period, directly caused her to be physically and mentally *1336 unable to avail herself of her judicial remedies.
With respect to plaintiff's physical and mental inability to bring suit until such time as it was brought, LSA-R.S. 9:5628 specifically states that "[t]he provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts." The plain language of the statute negates plaintiff's contention.
She contends she should be allowed to avail herself of the doctrine of contra non valentem, the judicially-created exception to the general rule of prescription. The doctrine of contra non valentem agere nulla currit præscriptio essentially provides that prescription does not run against a party unable to act. It has been applied to prevent the running of prescription in four distinct situations. Plaintiff asserts that the second and third categories of the doctrine as articulated in Whitnell v. Menville, 540 So.2d 304 (La.1989) are applicable to the case at bar, to-wit:
. . . . . .
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor herself has done some act effectually to prevent her creditor from availing herself of her cause of action;
. . . . .
We need not consider the second category, as it is by its terms inapplicable to this case. See Whitnell v. Menville, supra (citing Corsey v. State Dept. Of Corrections, 375 So.2d 1319 (La.1979)).
The third category of contra non valentem applies to situations where a defendant engages in conduct which prevents a plaintiff from availing himself of his judicial remedies. Whitnell v. Menville, supra (citing Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034 (La.1987)). More specifically, it applies where the defendant's conduct rises to the level of fraud, deliberate concealment, misrepresentation, or ill practices. Taylor v. Giddens, 618 So.2d 834 (La.1993); Whitnell v. Menville, supra; Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La.1990); Gover v. Bridges, 497 So.2d 1364 (La.1986).
We note the supreme court has expressed some concern as to whether the third category of contra non valentem applies in medical malpractice cases. See Taylor, supra; Gover, supra; Whitnell, supra. However, we find it unnecessary to decide this issue because there is evidence in the record to support a finding that plaintiff failed to show the requisite fraud, deliberate concealment, misrepresentation, or ill practices on the part of the defendant to trigger the doctrine.
A review of the record reveals that Dr. Golson testified that he evaluated plaintiff's CT scan on January 2, 1990, and then reevaluated the scan in the fall of 1993, following a conversation with Dr. J. Michael Barraza. He testified that he did not have any other contact with plaintiff or her CT scan or any related reports and did not become aware that there was a problem with his interpretation until the fall of 1993.
Dr. Barraza testified through deposition that he spoke briefly with Dr. Golson and suggested that Dr. Golson review plaintiff's 1990 CT scan after Dr. Dugas, an expert hired by Dr. Fields' attorney after suit was filed against him, approached Dr. Barraza and asked him to look at the CT scan. The evidence shows that the suit brought against Dr. Fields, and thus plaintiff's knowledge of her cause of action, preceded Dr. Golson's 1993 reevaluation of the CT scan and his awareness that there was a problem regarding his initial interpretation of the scan. Dr. Golson apparently had no knowledge of possible medical negligence until more than three and one-half years after he allegedly misinterpreted plaintiff's CT scan. A defendant cannot be said to have concealed facts of which he had no knowledge. Whitnell v. Menville, supra.
*1337 There is sufficient testimony and evidence in the record to support the trial court's findings and conclusions articulated in his written reason for judgment. Accordingly, we conclude that the trial court properly determined that Dr. Golson's conduct did not rise to the level of willfulness necessary to trigger the application of the third category of contra non valentem.
This specification of error lacks merit.

B. Solidary Obligors

Plaintiff next submits the trial court erred in finding that the suit filed against Dr. Fields did not interrupt prescription as to her cause of action against Dr. Golson. She alleges that Dr. Golson and Dr. Fields are solidary obligors and that, since suit against one solidary obligor interrupts prescription as to another, her timely filed suit against Dr. Fields interrupted prescription as to her cause of action against Dr. Golson.
Suit against one solidary obligor interrupts prescription as to the other solidary obligors. LSA-C.C. arts. 3503, 1799, 1793. However, prescription cannot be interrupted once it has accrued. Juneau v. Hartford, 458 So.2d 1011 (La.App. 3rd Cir.), writ denied, 462 So.2d 198 (La.1984). A medical malpractice action against one alleged solidary obligor does not have the effect of interrupting prescription that has already run against another alleged solidary obligor. Id.; Whitnell v. Menville, supra.
Here, Dr. Golson's alleged negligent act of misinterpreting plaintiff's CT scan occurred on January 2, 1990. As stated, pursuant to LSA-R.S. 9:5628, plaintiff's action against Dr. Golson should have been brought no later than January 3, 1993. She did not file suit against Dr. Fields, whom she alleges is a solidary obligor with Dr. Golson, until July 19, 1993. Thus, the prescriptive period on her claim against Dr. Golson had already run before a claim was filed against Dr. Fields. As stated above, prescription cannot be interrupted once it has accrued and, thus, plaintiff's timely action against Dr. Fields will not revive plaintiff's cause of action against Dr. Golson.
Plaintiff further submits that, pursuant to LSA-R.S. 40:1299.47(A)(2)(a) of the Louisiana Medical Malpractice Act, the filing of suit against Dr. Fields suspended prescription as to Dr. Golson, a solidary obligor, to the same extent that it suspended prescription as to Dr. Fields. We conclude that LSA-R.S. 40:1299:47(A)(2)(a) cannot save plaintiff's claim because if prescription cannot be interrupted once it has accrued, a fortiori, neither can it be suspended.

C. Continuing Tort

Finally, plaintiff submits that Dr. Golson's misinterpretation of the CT scan on January 2, 1990, was a continuing tort as to which the three-year limitation for medical malpractice claims did not begin to run at least until plaintiff's last contact with Dr. Fields on July 27, 1992. She alleges there was continuous action by Dr. Fields who, in his treatment of plaintiff, relied primarily upon Dr. Golson's diagnosis; therefore, plaintiff argues, through her relationship with Dr. Fields she maintained continuous contact with Dr. Golson. In support of this argument, plaintiff cites Winder v. Avet, 613 So.2d 199 (La.App. 1st Cir.1992), writ denied, 617 So.2d 907 (La.1993).
In Winder, a patient had been misdiagnosed as having pancreatic cancer. The patient eventually died as a result of the treatment he received for the wrong disease. The surviving spouse and children of the decedent brought suit against the pathologist who made the diagnosis. The defendant filed an exception of prescription. After reviewing the matter, the trial court ruled in favor of the plaintiffs and the defendant appealed. Upon appeal, the court held that the defendant's alleged misdiagnosis of the decedent's medical condition was a continuing tort as to which the three-year limitation for medical malpractice actions did not begin to run at least until a correct diagnosis was made.
The evidence in that case showed that, between the date of the alleged misdiagnosis *1338 and the date of decedent's death, he had been hospitalized 13 times for treatment of pancreatic cancer and resulting complications. It was further established that, during these hospitalizations, numerous laboratory specimens were taken from the patient and analyzed under the direction of the defendant. The appellate court concluded there had been continuous contact between the defendant and the patient from the time of misdiagnosis until the time of death and determined that the patient had been subjected to continuous treatment for the wrong disease for that period of time.
We find the present case distinguishable from Winder. The trial court in the instant case properly found that plaintiff failed to establish that Dr. Golson had any further contact with Dr. Fields regarding plaintiff's condition or that he had any continuing contact with plaintiff after the January 1990 CT scan evaluation. Dr. Golson testified that his last involvement with plaintiff's case was his January 2, 1990 evaluation of her CT scan, and that he never examined plaintiff clinically nor had any personal contact with her. He further testified that he and Dr. Fields, the treating physician, never communicated with each other regarding plaintiff's medical condition. Dr. Fields similarly testified that he never had any communication with Dr. Golson regarding plaintiff's condition. He further testified that the CT scan, although important, was only one of several factors relied upon in his diagnosis and treatment of plaintiff. According to Dr. Fields, he also relied upon his clinical examinations, his observations, plaintiff's medical history, and a vascular workup done by another physician.
Thus, we conclude that the trial court properly found there was no continuing tort by virtue of Dr. Fields' reliance on Dr. Golson's January 2, 1990 interpretation of plaintiff's CT scan. This specification of error lacks merit.

CONCLUSION
Based on the record before us and the applicable law, appellant has failed to establish that the trial court committed manifest error in finding that her claim against Dr. Golson and his employers had prescribed. All costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The proceedings regarding the constitutionality of LSA-R.S. 9:5628, the prescriptive statute applicable to medical malpractice claims, were stayed in the lower court until such time as the Louisiana Supreme Court rules in Whitnell v. Silverman, pending as No. 95-CA-0259.