958 So.2d 617 (2007)
In re Medical Review Panel Proceedings in the Matter Of Stephanie NOE.
No. 2005-C-2275.
Supreme Court of Louisiana.
May 22, 2007.
Rehearing Denied June 29, 2007.
Adams & Reese, Arthur F. Hickham, Jr., Edward J. Rice, Jr., New Orleans, for Applicant.
Steven M. Spiegel, Metairie, for Respondent.
PER CURIAM.
We granted certiorari to determine whether the court of appeal erred when it reversed the district court and held the one-year prescriptive period was suspended under the continuous treatment doctrine.

*618 FACTS AND PROCEDURAL HISTORY
On June 11, 2001, Stephanie Noe sought treatment from her physician, Dr. Hill, for sinus congestion. As he had on several occasions in the past, Dr. Hill ordered a Celestone injection, which was administered in Ms. Noe's right buttock by Nurse Hahn, an employee of IMG Healthcare Network. On March 12, 2003, twenty-one months after the injection had been given, Ms. Noe filed a medical malpractice complaint against IMG Healthcare Network and Dr. Hill and later amended the complaint to add Nurse Hahn. The complaint alleged Nurse Hahn administered the injection in an inappropriate location and/or manner causing Ms. Noe continuing back, buttock and leg pain and related problems and further alleged Dr. Hill and IMG Healthcare Network were vicariously liable under the theory of respondeat superior.
While the complaint was still before the medical review panel, defendants filed an exception of prescription as authorized by La. R.S. 40:1299.47(B)(2)(a). The district court granted the exception of prescription on March 9, 2004.
On appeal, the court of appeal affirmed and further held the doctrine of contra non valentem did not apply. Moreover, the court of appeal rejected Ms. Noe's argument that she should have been allowed to amend her complaint to assert a claim against Dr. Hill arising out of his independent negligence.
This court granted Ms. Noe's application for writ of certiorari, vacated the ruling of the court of appeal and remanded the case to the court of appeal to reconsider the prescription issue in light of this court's recent decision in Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261, involving the third category of contra non valentem.[1]
On remand, the court of appeal, applying the continuous treatment doctrine, reversed the district court and found the claim had not prescribed. Based on the conclusion that Ms. Noe's claim had not prescribed, the court of appeal pretermitted discussion of whether Ms. Noe should be granted the opportunity to amend her complaint to assert a claim against Dr. Hill arising out of his independent negligence.
This court then granted defendants' application for writ of certiorari to determine whether the claim had prescribed.

DECREE
After reviewing the evidence and considering the law, we hereby find that the claim against Nurse Hahn is prescribed. The vicarious liability claim against Dr. Hill arising under the doctrine of respondeat superior is also prescribed. However, we find the introduction of Ms. Noe's affidavit and deposition at the hearing on the exception of prescription expanded the pleadings to include a claim against Dr. Hill arising out of his own independent negligence. Moreover, we find the claim against Dr. Hill arising out of his own independent negligence remains viable and is not prescribed. Accordingly, the judgment of the court of appeal is affirmed in part and reversed in part.
*619 AFFIRMED IN PART AND REVERSED IN PART.
CALOGERO, C.J., and KIMBALL and VICTORY, JJ., concur in part and dissent in part and assign reasons:
JOHNSON and KNOLL, JJ., dissent in part and concur in part for reasons assigned by CALOGERO, C.J.
TRAYLOR, J., concurs in part and dissents in part for reasons assigned by VICTORY, J.
CALOGERO, Chief Justice, concurring in part and dissenting in part.
I concur in the portion of the majority opinion finding that the medical malpractice claim filed by plaintiff, Stephanie Noe, against defendant, Dr. Michael Hill, arising out of his independent negligence remains viable and is not prescribed. However, I dissent from the portion of the majority opinion finding that Ms. Noe's medical malpractice claim against defendant, Nurse Deborah Hahn, as well as her vicarious liability claim against Dr. Hill arising under the doctrine of respondeat superior, is prescribed. For the reasons detailed below, I would affirm the court of appeal's denial of the defendants' exception of prescription.
In Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261, this court found that prescription in a medical malpractice case is suspended pursuant to the third category of contra non valentum so long as the defendant health care provider continuously treats the plaintiff in an effort to improve the plaintiff's condition allegedly caused by negligent treatment. In this case, Ms. Hill timely filed her medical malpractice claim within one year of the date Dr. Hill's continuous treatment ended, making her claim against Dr. Hill for his independent negligence timely under Carter, as the majority correctly finds.
However, the majority errs when it finds that the suspension of prescription arising from Dr. Hill's continuous treatment of Ms. Noe does not extend to Ms. Noe's claim against Dr. Hill's alleged solidary obligor, Nurse Hahn. The clear purpose of La.Rev.Stat. 40:1299.47(A)(2)(a) is to suspend prescription against all joint and solidary obligors when prescription has been suspended against one of them. Proper application of the continuous treatment doctrine, coupled with the provisions of La.Rev.Stat. 40:1299.47(A)(2), results in a finding that Ms. Noe's medical malpractice claim against Nurse Hahn, as well as her claim against Dr. Hill arising out of his vicarious liability, was timely filed under the facts of this case.

FACTS AND PROCEDURAL HISTORY
In 1998, Ms. Noe, who was insured by IMG Healthcare Network, chose Dr. Hill as her primary care physician. Dr. Hill treated Ms. Noe during her pregnancy for twins, and provided other medical treatment, including treatment for Ms. Noe's on-going sinus problems, between 1998 and 2001. This medical malpractice claim arises out of Ms. Noe's visit to Dr. Hill on June 11, 2001, when she sought treatment for sinus congestion. As he had on several occasions in the past, Dr. Hill ordered a Celestone injection, which was administered by Nurse Hahn in Ms. Noe's right buttock.
Ms. Noe testified in her deposition that the injection was very painful, that she felt a "jolt" all the way down her leg, and that the injection did not feel like other Celestone injections she had received in the past, both because of the intensity of the pain and because she did not feel the burning sensation that she typically associated with steroid injections. Ms. Noe further *620 testified that the pain continued longer than the two or three days she would have expected, and that her husband, who was a nurse, told her when he removed the band-aid several days later that the injection had not been administered in the upper right quadrant of the buttock, the proper location for administering injections. About a week after the injection, Ms. Noe said, she noticed a "reddish-purple circle, knot type" in the location where Nurse Hahn had given her the injection.
Ms. Noe returned to Dr. Hill on August 6, 2001, complaining of problems in the area where the injection was given. By that time, Ms. Noe said, there was obvious deterioration and atrophy of her right buttock muscle. Dr. Hill noted on that date that Ms. Noe had a two-centimeter discoloration on her right buttock. Ms. Noe stated in her affidavit that her husband accompanied her on the August 6, 2001, visit to Dr. Hill, and that they specifically asked Dr. Hill whether she had suffered nerve damage as a result of the injection. Dr. Hill denied any nerve damage, telling them that the problems were related to an allergic reaction to the Celestone, Ms. Noe stated. At that point, Dr. Hill placed her on a one-year exercise program to strengthen her buttock muscles, she said.
Ms. Noe testified by deposition that her buttock muscle continued to atrophy after her August 6, 2001, visit to Dr. Hill, but that the deterioration "stabilized" within three months of the injection, although the pain continued to get more severe. Ms. Noe testified that she saw Dr. Hill at least four more times with complaints related to the injection site, and that she discussed the problems with him on the telephone on several other occasions.
The IMG Healthcare records indicate that Ms. Noe saw Dr. Hill on December 17, 2001, when she complained about hair loss and fatigue, and again on January 25, 2002, when once again her chief complaint was hair loss. Although the records contain no notations indicating Ms. Noe complained about the injection site at either the December 17, 2001, visit or the January 25, 2002, visit, Ms. Noe stated in her affidavit that Dr. Hill did check the injection site during the December 17, 2001, visit.
On March 27, 2002, Ms. Noe consulted one of Dr. Hill's associates, Dr. Frank Wharton, complaining of on-going leg pain since the injection. Dr. Wharton's notes indicate that Ms. Noe told him she thought that the injection had injured her sciatic nerve. According to Ms. Noe's affidavit, Dr. Wharton told her that her symptoms might warrant an MRI, and advised her to see Dr. Hill as soon as he was available. Ms. Noe returned to Dr. Hill on April 3, 2002, complaining of constant leg and back pain, at which time Dr. Hill referred her to a neurologist for EMG and MRI studies. According to Ms. Noe, the test results, which she received sometime in April of 2002, revealed that the injection had damaged her sciatic nerve.
Ms. Noe filed her Medical Malpractice Complaint against IMG Healthcare and Dr. Hill on March 12, 2003, approximately 21 months after the injection had been given on June 11, 2001, but less than a year after the last time she consulted Dr. Hill in April 3, 2002. In her complaint, Ms. Noe asserted that Dr. Hill ordered the injection and that an unidentified member of his staff administered the injection "in an inappropriate location and/or manner causing severe pain." Ms. Noe's complaint alleged that she sought treatment from Dr. Hill following the injection, for back and leg pain and eventual atrophy of her buttock, until Dr. Hill recommended that she seek treatment with a neurologist. Ms. Noe claimed that she was told for the first time in April of 2002 that "the injection *621 was the cause of her continuing back, buttock and leg pain and related problems," and that she suffered and continues to suffer severe pain, disfigurement, mental anguish and emotional distress. According to Ms. Noe's complaint, Dr. Hill is responsible for the negligence of the person who administered the injection "[u]nder the theory of respondeat superior and based on the fact that Dr. Hill was the supervisor of the unidentified employee who administered the injection."[1]
On May 21, 2003, defendants filed a "Petition to Allot a Docket Number" in the district court. Ms. Noe amended her complaint on October 23, 2003, to specifically name Nurse Hahn as the female member of the staff of IMG Healthcare who administered the injection. She filed her first amended and supplemental claim on November 6, 2003, to adopt by reference the allegations in her original complaint against Nurse Hahn.
Defendants filed an Exception of Prescription on January 8, 2004, as allowed by La.Rev.Stat. 23:1299.47(B)(2)(a).[2] At the hearing on the exception, the parties stipulated that the district court should consider documentary evidence in lieu of live testimony and submitted Ms. Noe's affidavit, Ms. Noe's deposition, and the IMG Healthcare chart (i.e., Ms. Noe's medical records). The district court granted the exception of prescription on March 9, 2004, without assigning written reasons. The court of appeal affirmed the district court decision dismissing Ms. Noe's complaint as prescribed, in an unpublished decision. In re Medical Review Panel Proceedings in Matter of Noe, 04-0760 (La.App. 4 Cir. 12/8/04), 888 So.2d 1170. This court granted Ms. Noe's application for supervisory writs, vacated the court of appeal decision, and remanded the case to the court of appeal for consideration in light of Carter, 04-0646, 892 So.2d 1261. In re Medical Review Panel Proceedings in Matter of Noe, 05-0070 (La.4/8/05), 898 So.2d 1289. On remand, the court of appeal reversed the district court judgment, which had granted the defendants' exception of prescription. In re Medical Review Panel Proceedings in the Matter of Stephanie Noe, 04-0760 (La.App. 4 Cir. 8/3/05), 916 So.2d 1138. The court of appeal found that "Dr. Hill's consistent relationship coupled with his reassurances of recovery and the implementation of [a] one year treatment program, thwarted Ms. Noe's inclination to bring suit and prevented the claim from prescribing." Id. at 7-8, 916 So.2d at 1143. This court granted defendants' application for supervisory writs. In re Medical Review Panel Proceedings in the Matter of Stephanie Noe, 05-2275 (La.4/17/06), 926 So.2d 497.

SUSPENSION OF PRESCRIPTION IN MEDICAL MALPRACTICE ACTIONS
Pursuant to La.Code Civ. Proc. art. 927(B), prescription must be specifically pled by a defendant and cannot be supplied by the court. The burden of proving *622 prescription ordinarily lies with the party raising the exception, but when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Carter, 04-0646 at 9, 892 So.2d at 1267. Evidence may be presented at the hearing on the exception. Id.
In this case, prescription is evident on the face of the pleadings. The injection that allegedly caused Ms. Noe's injuries and damages occurred on June 11, 2001, more than a year prior to March 12, 2003, the date on which she filed her medical malpractice complaint. Thus, Ms. Noe had the burden of proving at the hearing on the defendants' exception of prescription that the claim had not prescribed.
However, as a general rule, courts are required to strictly construe prescriptive statutes against prescription and in favor of the obligation sought to be extinguished, and therefore, of two possible constructions, to adopt the one that favors maintaining, as opposed to barring, the action. Id. at 10, 892 So.2d at 1269. Further, this court stated as follows in Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575:
The one-year prescriptive period for a medical malpractice action will not begin to run at the earliest possible indication that a patient may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against every person who might have caused his damage.
Id. at 6, 763 So.2d at 579-80, citing Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987).
Prescription in medical malpractice actions is governed by La.Rev.Stat. 9:5628(A), which provides as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
This court has previously recognized that La.Rev.Stat. 9:5628 is a "tripartite prescription provision" that sets forth two prescriptive periods within which a patient may bring a medical malpractice action: (1) one year from the date of the alleged act, or (2) one year from the date of discovery with a three-year limitation from the date of the alleged act. See Carter, 04-0646 at 10, 892 So.2d at 1268, and cases cited therein.
The reality is that, despite the above statute, which establishes a one-year prescriptive period for filing a medical malpractice action, medical malpractice lawsuits are virtually never actually filed in courts of competent jurisdiction within one year of the alleged act of malpractice. Rather, a medical malpractice plaintiff must first provoke a medical review panel, as his ability to file suit is constrained by the provisions of La.Rev.Stat. 40:1299.47(A)(1). That statute provides as follows:
All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission *623 to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
As this court stated in LeBreton v. Rabito, in addition to provoking a review panel, a medical malpractice plaintiff "must . . . receive an opinion from it before he can file suit in a court of law." 97-2221, p. 6 (La.7/8/98), 714 So.2d 1226, 1229, quoting Everett v. Goldman 359 So.2d 1256, 1263 (La.1978). Because this requirement makes it difficult, if not impossible, for medical malpractice plaintiffs to actually file suit within a year of an alleged act of malpractice, a number of suspension principles have been invoked to extend the one-year prescriptive period set forth in La.Rev.Stat. 9:5628. Generally, "prescription is suspended when the law, as a favor to somebody, prevents it from running." 1 Marcel Planiol & George Ripert, Traite Elementaire de Droit Civil, No. 2697 (12th ed.1939), reprinted in 1 Marcel Planiol & George Ripert, Treatise on the Civil Law, part 2, 593 (La. St. Law Inst. Trans. 1959). The reasons for the suspension principle were set forth as follows by Planiol and Ripert:
Suspension of prescription is a measure of equity, invented through regard for certain persons who are not in a position to interrupt prescription when it is running against them. The law comes to their help by holding, in derogation to general principles, that all the time they remain in such state does not count. The result is that everybody has the normal prescriptive delay within which to interrupt prescription by asserting his rights.
Id. at No. 2698, Treatise on the Civil Law, part 2 at 594.
Two situations that operate to suspend prescription in medical malpractice cases are expressly established by La.Rev.Stat. 40:1299.47(A)(2)(a), which provides, in pertinent part, as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
The first sentence of the above provision expressly suspends the one-year prescriptive period for filing a medical malpractice action in a court of competent jurisdiction until 90 days following notification of the issuance of the medical review panel's opinion. The second sentence expressly suspends prescription against all joint and solidary obligors/tortfeasors "to the same extent" prescription has been suspended against one or more other joint or solidary obligors/tortfeasors when a timely request for review has been filed against that obligor/tortfeasor.
In addition to the two statutory provisions that suspend prescription in medical *624 malpractice actions, set forth in La.Rev. Stat. 40:1299.47(A)(2)(a), Louisiana courts have developed a number of jurisprudential exceptions to offset the sometimes harsh results of prescriptive statutes. Carter, 04-0646 at 11, 892 So.2d at 1269. These exceptions are called contra non valentem non currit praescriptio, which literally means "prescription does not run against a person who could not bring his suit." Id. The four categories of contra non valentum recognized by this court are as follows:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.
Id. at 11-12, 892 So.2d at 1268. These jurisprudential exceptions to prescription are designed to allow courts "to weigh the `equitable nature of the circumstances in each individual case' to determine whether prescription will be tolled." Id. at 12, 892 So.2d at 1269.
The continuous treatment doctrine adopted by this court in Carter is based on the third category of contra non valentum listed above, which applies when "the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action." Id. at 12, 892 So.2d at 1269. In fact, this court noted before Carter in In re Medical Review Panel for the Claim of Moses, 00-2643 (La.5/25/01), 788 So.2d 1173, that a suspension of prescription premised on the continuation of a special relationship is always based on the third category of contra non valentum. Id.[3] The doctrine also applies to "situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights." Id. at 12, 892 So.2d at 1269.
Proper consideration of the prescription issues raised by this case requires consideration of both of the statutory prescription principles set forth in La.Rev.Stat. 47:1299.47(A)(2)(a), as well as the jurisprudential suspension principle embodied in the continuous treatment doctrine. I will apply those principles to the two distinct issues raised by this case. First, I will analyze whether Ms. Noe's Medical Malpractice Complaint against Dr. Hill and IMG Healthcare qualified as a timely "filing of [a] request for review of a claim" such that, pursuant to the first sentence of La.Rev.Stat. 40:1299.47(A)(2)(a), the one-year prescription period for filing a medical malpractice action in a court of *625 competent jurisdiction was suspended until ninety days following notification of the issuance of the medical review panel's opinion. In order to reach that decision, I will consider whether prescription was suspended pursuant to the continuous treatment doctrine. Second, I will analyze whether the prescriptive period during which Ms. Noe could amend her Medical Malpractice Complaint to name Nurse Hahn as a defendant jointly liable with Dr. Hill and IMG Healthcare was suspended pursuant to the second sentence of La.Rev.Stat. 40:1299.47(A)(2)(a), such that her amended complaint was timely filed.

CONTINUOUS TREATMENT DOCTRINE
Prior to Carter, this court had declined to address directly the continuous treatment doctrine in medical malpractice cases or to recognize the possibility that a doctor's continuing professional relationship with a patient might, under some circumstances, operate to suspend prescription in a medical malpractice claim. Id. at 12-13, 892 So.2d at 1269. This court noted in Carter that one reason prescription is suspended under the continuous treatment doctrine is the fact that, so long as the plaintiff remains in the care of the defendant physician, "she could reasonably expect [or hope for] a correction of the diagnosis or tortious treatment." Id. at 13, 892 So.2d at 1269.
The court went on in Carter to find, based on the circumstances of that case, that prescription was suspended by virtue of the continuous treatment doctrine because the plaintiff had reasonably relied on the "repeated assurances and . . . continuous efforts" of the defendant dentist to correct the extensive dental problems caused by the alleged malpractice, which "served to effectively prevent the plaintiffs from pursuing their claims against him." Id. at 19, 892 So.2d at 1273. Prescription was suspended, the court found, until the doctor-patient relationship terminated upon the defendant's refusal to continue treating the plaintiff. Id. Thus, the plaintiff's suit, filed within one year of that date, was timely. Id. at 19, 892 So.2d at 1273.
The Carter case analogized the continuous treatment doctrine to the continuous representation doctrine that was once applied by Louisiana courts in legal malpractice cases "where the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." Id. at 16, 892 So.2d at 1271, quoting Lima v. Schmidt, 595 So.2d 624, 630 (La.1992).[4] This court adopted the continuous representation doctrine in legal malpractice cases in Braud v. New England Ins. Co., 576 So.2d 466, 468 (La.1991), in which it cited with approval a number of Louisiana court of appeal cases that had applied the *626 doctrine, including Newsom v. Boothe, 524 So.2d 923 (La. Ap. 2 Cir.), writ denied, 531 So.2d 479 (La.1988); Malone v. Wright, 525 So.2d 13 (La.App. 3 Cir.1988); and Olivier v. National Union Fire Ins. Co., 499 So.2d 1330 (La.App. 3 Cir.1986). In Braud, this court characterized the continuous representation doctrine as follows: "[D]uring the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, prescription will be suspended." 576 So.2d at 468. See Carter, 04-0646 at 15, quoting Lima, 595 So.2d at 630, quoting Braud.
The continuous representation doctrine in legal malpractice cases was grounded on the premise that an attorney's decision to continue to represent a client induces the client to continue to depend on the attorney's expertise to resolve the pending legal issue. In Carter, this court noted the analogous principle that in a medical malpractice case, "[i]t is the continuation of the special relationship that offers the possibility of correction of the injury and thus may postpone the running of prescription." 04-0646 at 13, 892 So.2d at 1269. Like the continuing representation doctrine in legal malpractice cases, the continuing treatment doctrine in medical malpractice cases applies "where the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." Id. at 16, 892 So.2d at 1271, quoting Lima, 595 So.2d at 630.
I agree with the court of appeal that Ms. Noe has carried her burden in this case of proving that prescription was suspended by virtue of the continuous treatment doctrine adopted by this court in Carter. This court adopted two elements in Carter that must be established by a plaintiff in a medical malpractice action seeking to avail herself of the benefits of the continuous treatment doctrine to suspend prescription:
(1) a continuing treatment relationship that is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice.
04-0646 at 16, 892 So.2d at 1271. Ms. Noe established the first of those two elements through her testimony that she had selected Dr. Hill as her personal care physician in 1998 and that he had continued in that capacity between 1998 and 2002. Further, the IMG Healthcare records establish that Ms. Noe sought treatment from Dr. Hill on at least four occasions during the nine-month period following the injection. Obviously, their physician-patient relationship was more than perfunctory.
Defendants' primary argument is that Ms. Noe failed to establish the second of the two elements  i.e., that Dr. Hill did not engage in conduct that discouraged Ms. Noe from filing suit, such as "attempting to rectify an alleged act of malpractice." Defendants claim that the continuous treatment doctrine should not apply because the relationship between Ms. Noe and Dr. Hill was "merely continuity of a general professional relationship," rather than "involvement after the alleged malpractice . . . for the performance of the same or related services." Id. In support of this argument, they point to the fact that the IMG Healthcare record includes only two notations by Dr. Hill indicating that Ms. Noe sought treatment for continuing problems related to the injection site. The first of those two notations appears in Dr. Hill's note concerning Ms. Noe's August 6, 2001, visit that occurred approximately six weeks after the injection. The second of those notations appears *627 in Dr. Hill's note concerning Ms. Noe's visit on April 3, 2002, ten months after the injection, when he referred her to a neurologist. Because Dr. Hill's notes concerning Ms. Noe's December 17, 2001, and her January 25, 2002, visits include no notation that Ms. Noe complained about the injection site, defendants argue that, beyond August 6, 2001, Dr. Hill provided no treatment for that problem.
To the contrary, Ms. Noe directs this court's attention to her deposition and affidavit, in which she stated that she consulted Dr. Hill with complaints about the injection site on at least four occasions, including the December 17, 2001, visit, when, according to Ms. Noe, Dr. Hill in fact checked the injection site. Furthermore, Ms. Noe stated in her affidavit that she spoke to Dr. Hill by telephone between the August and December visits regarding the injection site, and that Dr. Hill consistently told her that he was confident about his diagnosis that she was suffering from an allergic reaction to the Celestone. Moreover, according to Ms. Noe, Dr. Hill placed her on a one-year exercise program to strengthen her buttock muscles and encouraged her on several occasions to continue with the program when she questioned his diagnosis.
In Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5 Cir.), writ denied, 476 So.2d 347 (La.1985), a case that applied the analogous continuous representation doctrine in a legal malpractice case, the court noted that either the defendant attorney did not know that continuing to represent the plaintiff after the cause had prescribed was a conflict of interest, or the defendant attorney had failed to disclose a conflict of interest that he knew existed. 469 So.2d at 1168. Either way, the court implied, the continuous representation doctrine suspended prescription. If the attorney was unaware of the conflict, "he would have us impose on his client a greater burden of legal knowledge than he possessed," the court stated Id.
An analogous rule applies here. The defendants would have us find that, because Ms. Noe expressed a suspicion that she might have suffered nerve damage as a result of the injection, her medical malpractice claim prescribed because she did not file her medical malpractice complaint within one year of the date the injection was administered. However, if it were to find that Ms. Noe's medical malpractice complaint is prescribed, this court would be imposing on Ms. Noe a "greater burden of medical knowledge" than Dr. Hill possessed. Otherwise, Dr. Hill intentionally misled Ms. Noe concerning the nature of her injury, which itself would be sufficient to suspend prescription in this case.
Further, in Braud, 576 So.2d 466, in which this court first adopted the continuing representation doctrine for legal malpractice cases, the court noted that a finding that prescription ran during the existence of an on-going attorney-client relationship "would create a situation where an attorney could effectively defeat a malpractice claim against himself by utilizing the appeals process to continue the attorney-client relationship until such time as prescription has run." Again, that reasoning applies to this case. A finding that Ms. Noe's medical malpractice claim prescribed one year from the date of the injection would create a situation where Dr. Hill could have defeated her medical malpractice claim simply by misdiagnosing her problem, then prescribing a one-year course of treatment during which prescription would run. Such a result would be untenable. Accordingly, the majority has correctly found that prescription in Ms. Noe's medical malpractice claim was suspended pursuant to the continuous treatment doctrine until the professional *628 relationship between Ms. Noe and Dr. Hill was terminated.
That conclusion leads me to the question of whether Ms. Noe's claim was timely filed on March 12, 2003. When, as in this case, prescription has been suspended by virtue of the third category of contra non valentum, prescription does not run until the reason for the suspension is removed. The injection that allegedly caused Ms. Noe's damage was administered on June 11, 2001, but Ms. Noe's physician-patient relationship with Dr. Hill continued until at least April 3, 2002, the last time she saw Dr. Hill, when he referred her to a neurologist. Because Ms. Noe's relationship with Dr. Noe did not terminate until April 3, 2002, at the earliest, prescription did not begin to run until that date. Accordingly, her Medical Malpractice Complaint filed on March 12, 2003, within one year of April 3, 2002, was timely.

PRESCRIPTION AGAINST JOINT AND SOLIDARY OBLIGORS
Nurse Hahn has argued in this court that, even if the continuous treatment principle applies in this case to suspend prescription against Dr. Hill and IMG Healthcare, Ms. Noe's medical malpractice claim against Nurse Hahn is nevertheless barred by prescription because it was not filed within one year of the date of the injection, June 11, 2001, and Ms. Noe has not alleged that Nurse Hahn provided any treatment, continuing or otherwise, to Ms. Noe, after that date. The majority has accepted that argument and found that Ms. Noe's claims against Nurse Hahn, as well as Ms. Noe's vicarious liability claims against Dr. Hill, are barred by prescription.
The majority's finding that Ms. Noe's claim against Nurse Hahn is prescribed, despite the fact that her claim against Dr. Hill has not prescribed, fails to give proper effect to La.Rev.Stat. 40:1299.47(A)(2)(a), which provides as follows:
The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
Pursuant to the express language of La. Rev.Stat. 40:1299.47(A)(2)(a), when a request for review of a medical malpractice claim has been timely filed, that request suspends prescription against all joint and solidary obligors "to the same extent" prescription is suspended against the subject of the request [i.e., the complained of medical provider], even if those joint and solidary obligors are not named in the request.
According to La. Civ.Code art. 2324(B), "liability for damages caused by two or more persons shall be a joint and divisible obligation."[5] Under the facts of this case, as alleged by Ms. Noe, Nurse Hahn is clearly a solidary obligor with Dr. Hill. It was allegedly Nurse Hahn's direct negligence of administering the Celestone injection in the wrong location or in an improper manner that initially caused Ms. Noe's damages. Thereafter, Ms. Noe consulted Dr. Hill about the problems allegedly caused by the injection, and he allegedly told Ms. Noe that she had experienced an allergic reaction or a muscular injury that could be resolved by undertaking a one-year exercise program. Dr. Hill then continued *629 to treat Ms. Noe for some nine months, seeking to resolve the specific medical problem allegedly caused by the injection that Nurse Hahn had improperly administered. Thus, Ms. Noe's damages in this case were allegedly caused by two or more persons  Nurse Hahn and Dr. Hill. I would find that Ms. Noe's allegations outlined above, if proven after trial of this matter, are sufficient to support a judgment that Ms. Noe's damages were "caused by two or more persons"  i.e., Dr. Hill and Nurse Hahn, and thus that Dr. Hill and Nurse Hahn are jointly liable for those damages.
In order to properly interpret the second sentence of La.Rev.Stat. 40:1299.47(A)(2)(a), some historical perspective is helpful. The medical malpractice statute has, since the original adoption of the Medical Malpractice Act by the 1975 Louisiana Legislature, included a requirement that all medical malpractice claims be submitted to a medical review panel prior to the filing of suit and has also provided for suspension of prescription until 90 days after issuance of the medical review panel's opinion. However, the second sentence of La.Rev.Stat. 40:1299.47 at issue here, which suspends prescription against all joint and solidary obligors when prescription has been suspended against one of them, was not added until 1991.[6] The original 1991 amendment provided only that the filing of a request for review of a medical malpractice claim "shall suspend the running of prescription against all solidary obligors," and did not mention joint obligors or joint tortfeasors. The provision was then amended by the 1997 Louisiana Legislature to include today's language that joint obligors/tortfeasors are persons against whom prescription is suspended as a result of the filing of a request for review of a medical malpractice claim. The current language, quoted above, has been in the statute since 1997.
Prior to the 1991 adoption of the second sentence of La.Rev.Stat. 40:1299.47(A)(2)(a), which includes a specific suspension principle applicable to solidary obligors, Louisiana law contained no express provision governing the effect of the timely filing of a medical malpractice claim against a joint or solidary obligor on medical malpractice claims against other joint or solidary obligors. However, the general tort law did contain a number of such provisions governing interruption of prescription against joint or solidary obligors by the filing of suit against one or more such joint or solidary obligors. See La. Civ.Code arts. 1799,[7] La. Civ.Code art. 2324(C),[8] and La. Civ.Code art. 3503.[9] *630 Prior to the adoption of the suspension principle applicable to solidary obligors in medical malpractice cases, this court held in Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), that prescription in medical malpractice cases could be interrupted against joint and solidary obligors pursuant to the general tort rules by the filing of a medical malpractice claim against another solidary obligor. See Whitnell v. Menville, 540 So.2d 304, 308 (La.1989).
Further, despite the adoption of the suspension principles relative to solidary and joint obligors/tortfeasors in medical malpractice cases, several Louisiana cases decided since the adoption of those provisions have continued the practice of applying the principles developed by Louisiana courts to interpret the interruption principles set forth in general tort law to determine whether a medical malpractice claim has been timely filed against a joint or solidary obligor with the health care provider named in the original complaint. See, e.g., Geiger v. State ex rel. Dept. of Health & Hosp., 01-2206 (La.4/12/02), 815 So.2d 80; Pfiffner v. Correa, 9102734 (La. App. 4 Cir. 1/13/94), 640 So.2d 281. Specifically, in Geiger, this court stated that prescription cannot be suspended after it has run, then cited a case that stated only that prescription cannot be interrupted after it has run. 01-2206 at 5, 815 So.2d at 83. In Pfiffner, the court noted generally that prescription as to one solidary obligor is suspended pursuant to La.Rev.Stat. 40:1299.47(A)(2)(a) by the filing of a medical review claim against any other solidary obligor, but then held that as long as a suit was pending prescription was interrupted as to the other solidary obligors. Neither of those cases clearly distinguish between suspension of prescription and interruption of prescription.
The only Louisiana case I have found that directly addresses the effect of the portion of La.Rev.Stat. 40:1299.47(A)(2)(a) that suspends prescription against joint and solidary obligors/tortfeasors is Masters v. Fields, 27924, 27925 (La.App.2d Cir.1/24/96), 666 So.2d 1333. In Masters, the court of appeal addressed both whether prescription had been interrupted against an alleged solidary obligor in a medical malpractice case under the general tort law and whether prescription had been suspended against that solidary obligor under La.Rev.Stat. 40:1299.47(A)(2)(a). First, the court of appeal found that prescription was not interrupted pursuant to general tort law because a "medical malpractice action against one alleged solidary obligor does not have the effect of interrupting prescription that has already run against another alleged solidary obligor." Id. at 6, 666 So.2d at 1337, citing Whitnell, 540 So.2d 304. The court went on to find that the plaintiff's filing of a medical malpractice complaint against one solidary obligor did not suspend prescription as to another pursuant to La.Rev.Stat. 40:1299.47(A)(2)(a). The reason for this finding was summarily stated as follows: "We conclude that LSA-R.S. 40:1299:47(A)(2)(a) cannot save plaintiff's claim because if prescription cannot be interrupted once it has accrued, a fortiori, neither can it be suspended." Id.
In short, despite the fact the Masters court did distinguish between interruption and suspension of prescription, it ultimately applied a jurisprudential rule developed for cases applying the interruption of prescription principle set forth in general tort law to the suspension of prescription principle set forth in La.Rev.Stat. 40:1299.47(A)(2)(a). Application of that rule was made by the Masters court without *631 citation to any authority and without any analysis of the similarities and differences between interruption of prescription under general tort law and suspension of prescription under La.Rev.Stat. 40:1299.47(A)(2)(a). For the reasons set forth below, I disagree with the statement of the court of appeal in Masters that, if prescription cannot been interrupted, it cannot be suspended.
First, I note that this court held in LeBreton, 97-2221, 714 So.2d 1226, "that the specific statutory provision providing for the suspension of prescription in the context of medical malpractice [must be] applied alone, not complementary to the more general codal article which addresses interruption of prescription." Id. at 2, 714 So.2d at 1227 (emphases added). The primary issue in LeBreton did not concern the portion of La.Rev.Stat. 40:1299.47(A)(2)(a) that extends a suspension of prescription against one joint or solidary obligor to all joint and solidary obligors. Rather, the primary issue was whether a plaintiff in a medical malpractice action could file a premature lawsuit in a court of competent jurisdiction, then file a request for a medical review panel, thereby taking advantage of both the interruption of prescription triggered by the filing of suit and the suspension of prescription triggered by the filing of the request for review of a medical malpractice claim. Nevertheless, this court found in LeBreton that the "more general codal article which addresses interruption of prescription" should not be applied in medical malpractice cases, because such cases are expressly governed by the suspension of prescription rule set forth in La.Rev. Stat. 40:1299.47(A)(2)(a). That finding in LeBreton demonstrates that application of principles developed in cases interpreting interruption of prescription to this case, which involves suspension of prescription under La.Rev.Stat. 40:1299.47(A)(2)(a), is inappropriate. It follows that the court of appeal in Masters improperly applied a rule developed to interpret interruption of prescription to decide whether plaintiff's claim against the alleged solidary obligor had been suspended.
A second reason I disagree with the court's treatment of the suspension issue in Masters is grounded in the fact that important distinctions exist between interruption of prescription and suspension of prescription, despite the fact they are often treated by Louisiana courts as though they were the same. See the above discussion of Geiger, Masters and Pfiffner. The Louisiana Civil Code provides that prescription is interrupted in three ways. Pursuant to La. Civ.Code art. 3462, prescription is interrupted (1) by the filing of suit or (2) by the service of process. Further, La. Civ.Code art. 3464 provides for interruption of prescription, (3), by acknowledgment. Thus, when suit has been filed, when process has been served, or when a right has been acknowledged, prescription is interrupted, "the time that has run is not counted," and "[p]rescription commences to run anew from the last day of the interruption." La. Civ.Code art. 3466. Planiol and Ripert described the effect of interruption of prescription as follows:
where the suit is introduced in time, the court in giving its judgment, should refer back to the beginning of the suit in order to determine the rights of the parties.
1 Planiol and Ripert, No. 2692, reprinted in 1 Treatise on the Civil Law, part 2, 592.
On the other hand, suspension of prescription is triggered, typically not because of some specific action taken by the plaintiff, as occurs when prescription is interrupted, but because of the existence of a relationship of trust between the plaintiff *632 and defendant. This conclusion is evident in the provisions of La. Civ.Code art. 3469, which provides that prescription is suspended "as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, [] curators and interdicts during interdiction, and caretakers and minors during minority." According to Planiol and Ripert, "[s]uspension is a measure of equity, invented through regard for certain persons who are not in a position to interrupt prescription when it is running against them." 1 Planiol and Ripert, No. 2698, reprinted in 1 Treatise on the Civil Law, part 2, 594. Further, "the causes of suspension are founded precisely on the same principle as the initial delay . . . for the period of prescription: the impossibility to act." Id. at No. 680, reprinted in 1 Treatise on the Civil Law, part 2, 368.
Reference to the above authorities reveals that the policies underlying the civilian doctrines of interruption of prescription and suspension of prescription are very different. According to Planiol and Ripert, the purpose of interruption of prescription is, in the case of a successful lawsuit, to fix the rights of the parties at the time prescription is interrupted by the filing of suit, the service of process, or acknowledgment of a right. The purpose of suspension, however, is to protect the rights of parties who are unable to take an action that will interrupt prescription. 1 Plainol and Ripert, No. 2698, reprinted in 1 Treatise on the Civil Law, part 2, 594. Given the vast difference in the policies underlying the two doctrines, the jurisprudential rules applicable to interruption of prescription should not be applied to determine whether prescription has been suspended. For this reason also, the court of appeal's adoption in Masters of an interruption principle to interpret a statutory suspension provision was improper.
La.Rev.Stat. 40:1299.47(A)(2)(a) expressly provides for suspension of prescription against all unnamed joint and solidary obligors/tortfeasors when prescription has been suspended against at least one joint or solidary obligor by virtue of the timely filing of a medical malpractice review complaint. The majority has found in this case that, despite the fact that Ms. Noe did not file her request for review of her medical malpractice claim against Dr. Hill and IMG Healthcare until more than a year after the injection, her request was timely by virtue of the continuous treatment doctrine, the operation of which rendered Ms. Noe "legally unable" to file suit until the doctor-patient relationship terminated. Under the express language of the second sentence of La.Rev.Stat. 40:1299.47(A)(2)(a), the timely filing of Ms. Noe's request for review against Dr. Hill suspended the running of prescription against all of his joint obligors/tortfeasors, including Nurse Hahn, "to the same extent" prescription was suspended against Dr. Hill. Thus, I would find that Ms. Noe was free to amend her petition to add Nurse Hahn as an additional defendant, jointly liable with Dr. Hill, at any time within 90 days following notification of the issuance of the medical review panel opinion. Because no medical review panel opinion had been issued prior to the trial on the exception of prescription in this case, Ms. Noe's amended Medical Malpractice Complaint naming Nurse Hahn as a defendant for the first time was timely when filed on October 23, 2003, pursuant to the express language of La.Rev.Stat. 40:1299.47(A)(2)(a).
This interpretation of the language of La.Rev.Stat. 40:1299.47(A)(2)(a) fulfills this court's obligation to strictly construe prescriptive statutes against prescription and in favor of the obligation sought to be extinguished, and to adopt, of two possible constructions, the one that favors maintaining *633 as opposed to barring the action. Carter, 04-0646 at 10, 892 So.2d at 1269. My interpretation of La.Rev.Stat. 40:1299.47(A)(2)(a) also serves the policy considerations underlying suspension of prescription in general. According to Planiol and Ripert, the primary principle underlying the suspension doctrine is the same as the principle underlying the initial delay in a period of prescriptioni.e., "the impossibility to act." 1 Planiol and Ripert at No. 680, reprinted in 1 Civil Law Treatise, part 2, 368. Because it is impossible to act, prescription does not run so long as it is suspended. Id. If prescription did not run [or begin to run] during the time Ms. Noe was involved in a continuous treatment relationship with Dr. Hill, her claim against Nurse Hahn cannot be barred by prescription.
From a practical point of view, when two health care providers are alleged to be jointly or solidarily liable for the plaintiff's damages caused by medical malpractice, a finding that prescription was suspended against one, but not the other, as the majority has found in this case, is inequitable and unworkable because it places the plaintiff in an untenable position. In fact, the majority's finding that Ms. Noe's claim against Nurse Hahn is prescribed necessarily presupposes that Ms. Noe should have had the foresight to file her request for review against Nurse Hahn within one year of the date of the injection. However, for most of that year, Ms. Noe was participating in an on-going relationship of trust with Dr. Hill, who ordered the injection as Nurse Hahn's supervisor. Because Nurse Hahn was acting on the orders of Dr. Hill when she administered the injection to Ms. Noe, any suit against Nurse Hahn would logically have to include Dr. Hill as a defendant. Thus, the majority's decision places Ms. Hill in the unenviable position of having to choose whether to risk the loss of her rights against Nurse Hahn or terminate her relationship of trust with Dr. Hill by filing suit against Dr. Hill and Nurse Hahn. And, Ms. Noe is required to make this choice during a period of time when she is considered to be "legally unable" to file her suit against Dr. Hill because of the on-going continuous treatment relationship in which they were involved, a relationship that serves to prevent prescription from running. Thus, the result of the majority's finding that Ms. Noe's claim against Nurse Hahn is prescribed is that the continuing treatment doctrine has no practical effect in cases where the plaintiff's damages were allegedly caused by the joint or solidary liability of more than one health care provider, only one of whom is providing continuous treatment. I would decline to limit the continuous treatment doctrine in such a way that the plaintiff is placed in that position.
For the reasons stated herein, I would find that the court of appeal correctly denied the exception of prescription filed by Nurse Hahn. Thus, I dissent from the portion of the majority decision that finds that Ms. Noe's medical malpractice claim against Nurse Hahn and her vicarious liability claims against Dr. Hill are prescribed. I would affirm the court of appeal decision in its entirety.
KIMBALL, J. concurring in part and dissenting in part.
While I agree that the claim against Nurse Hahn is prescribed and that the vicarious liability claim against Dr. Hill arising under the doctrine of respondeat superior is also prescribed, I dissent from the court's conclusion that the introduction of Ms. Noe's affidavit and deposition at the hearing on the exception of prescription expanded the pleadings to include a claim against Dr. Hill arising out of his own independent negligence.
*634 VICTORY, J., concurring in part and dissenting in part.
I concur in the portion of the per curiam opinion finding that the claim against Nurse Hahn is prescribed and the vicarious liability claim against Dr. Hill is prescribed. I dissent from the portion of the opinion which holds that plaintiff has asserted a claim against Dr. Hill for his own independent negligence in treating plaintiff and that such claim has not prescribed. In my view, the "continuous treatment rule" developed and applied in Carter v. Haygood, 04-0646 (La.1/19/95), 892 So.2d 1261, is wrong and does not operate to suspend prescription in this medical malpractice case, filed well after one year from the date of any alleged malpractice.
Thus, I respectfully concur in part and dissent in part.
KNOLL, J., dissenting in part and concurring in part.
I dissent, in part, and concur, in part, for the reasons assigned by Calogero, C.J.
NOTES
[1] This court's order addressed its recent ruling in Carter and the application of an incorrect date concerning Ms. Noe's visit to Dr. Frank Wharton, stating:

Granted; the court of appeal's ruling is vacated and the case is remanded to the court of appeal to reconsider the prescription issue (1) in light of this Court's recent decision in Carter v. Haygood, 892 So.2d 1261 (La.1/19/05) involving the application of the third category of contra non valentem, and (2) applying the correct date of March 27, 2002 as the date Ms. Noe visited Dr. Frank Wharton.
[1] Ms. Noe's only allegation against Dr. Hill in her medical malpractice complaint was based on his vicarious liability for Nurse Hahn's actions. However, as the majority finds, Ms. Noe's pleadings were expanded by the introduction of her affidavit and deposition at the hearing on the defendants' exception of prescription to allege independent negligence against Dr. Hill. See La.Code Civ. Proc. art. 1154.
[2] La.Rev.Stat. 40:1299.47(B)(2)(a) provides as follows:

A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
[3] I note that this statement is consistent with La. Civ.Code art. 3469, which provides for suspension of prescription "as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction, and caretakers and minors during minority." All of the listed situations involve relationships of trust that should not be undermined by a need to "race to the courthouse" to file suit when the problems can perhaps be resolved by continuation of the relationship. In each of the listed situations, and in the continuous treatment situation, a resort to suit becomes necessary only if the relationship breaks down to the point that it terminates.
[4] In Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, this court held that the continuous representation doctrine no longer operates in legal malpractice bases to suspend prescription because the one- and three-year periods of limitation in legal malpractice cases established by La.Rev.Stat. 9:5605 are peremptive in nature and thus "may not be renounced interrupted, or suspended," and because contra non valentum does not apply to peremption. Nevertheless, this court in Carter, 04-0646, 892 So.2d 1261, analogized the continuous treatment doctrine in medical malpractice cases to the continuous representation rule in legal malpractice cases, and applied principles originally developed in continuous representation legal malpractice cases. The Reeder decision was not mentioned in Carter, even by the dissenters. Thus, I would continue the practice began in Carter of applying the principles developed in continuous representation legal malpractice cases by analogy to this continuous treatment medical malpractice case.
[5] The only exception to that rule arises when two or more people conspire together to "commit an intentional or willful act," in which case those two people are "answerable, in solido . . ., for the damage caused by such act." La. Civ.Code art. 2324(A).
[6] Even before 1991, La.Rev.Stat. 40:1299.41(G) provided that the filing of a timely medical malpractice review request suspended prescription in medical malpractice cases with regard to solidary obligors who were non-qualified health care providers under the Medical Malpractice Act. That provision was clarified in 1991 and now specifically refers to the suspension principle regarding joint and solidary obligors/tortfeasors set forth in La.Rev.Stat. 40:1299.47(A)(2)(a).
[7] La. Civ.Code art. 1799 provides as follows:

The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs.
[8] La. Civ.Code art. 2324(C) provides as follows:

Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
[9] La. Civ.Code art. 3503 provides as follows:

When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.
When prescription is interrupted against a successor of a solidary obligor, the interruption is effective against other successors if the obligation is indivisible. If the obligation is divisible, the interruption is effective against other successors only for the portions for which they are bound.