916 So.2d 1138 (2005)
In re Medical Review Panel Proceedings in the Matter of Stephanie NOE.
No. 2004-CA-0760.
Court of Appeal of Louisiana, Fourth Circuit.
August 3, 2005.
*1139 Steven M. Spiegel, Steven M. Spiegel, APLC, New Orleans, LA, for Appellant.
Arthur F. Hickham, Jr., Edward J. Rice, Jr., Adams and Reese LLP, New Orleans, LA, for Appellee.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
This appeal arises from a medical malpractice action, which was dismissed by the trial court, finding the claim had prescribed. This Court affirmed the judgment of the trial court concluding its finding was not manifestly erroneous. Upon review by the Supreme Court this matter *1140 was remanded for a finding in accordance with its recent ruling in Carter v. Haygood, 892 So.2d 1261 (La.1/19/05).

FACTS AND PROCEDURAL HISTORY
On June 11, 2001, plaintiff/appellant, Stephanie Noe (hereinafter "Mrs. Noe"), sought treatment from Dr. Michael Hill (hereinafter "Dr. Hill") for sinus congestion. Dr. Hill ordered a steroid injection of Celestone, which was administered by his nurse, Ms. Deborah Hahn (hereinafter "Nurse Hahn"). Mrs. Noe testified that the injection was extremely painful because it caused a jolt of pain down her leg, which was different from her previous steroid injections. She further stated, "I didn't feel any medication at all. Usually, with that type of steroid shot, it gets real warm and it burns as it's going in. I didn't feel that at all." Mrs. Noe testified that within one week, a reddish-purple knot developed at the site of the injection. One month after the injection, Mrs. Noe experienced an increase in pain and suffered atrophy of the buttock muscle.
On August 6, 2001, Mrs. Noe returned to Dr. Hill because of persistent pain and discoloration in the injection area. Dr. Hill advised her that the muscle reacted badly to the shot, placed her on a one-year recovery program and reassured Ms. Noe that it would resolve in time. Mrs. Noe continued to treat with Dr. Hill for the injury. On March 27, 2002, Mrs. Noe informed Dr. Wharton, an associate of Dr. Hill's, that she thought she suffered sciatic nerve damage as a result of the injection. Ten months after the injection, on April 3, 2002, due to Mrs. Noe's increasing symptoms, Dr. Hill referred Mrs. Noe to a neurologist and ordered a nerve conduction study (EMG) and an MRI. In May of 2002, the tests revealed an injury to the sciatic and inferior gluteal nerve on her right side relating to the Celestone injection.
On March 12, 2003, Mrs. Noe filed a Complaint with the Louisiana Patients' Compensation Fund Oversight Board, alleging medical malpractice against Dr. Hill, IMG Healthcare Network (IMG), and an unidentified member of the staff of IMG who administered the injection. In her complaint, Mrs. Noe asserted she learned for the first time in April 2002 that the injection was the cause of her continuing back, buttock, and leg pain.
On May 21, 2003, Dr. Hill filed a Petition to Allot a Docket Number for purposes of discovery and for the filing of exceptions. In October 2003, Mrs. Noe amended her complaint to name Nurse Hahn as an additional party defendant, asserting that Nurse Hahn was the IMG staff member who administered the injection.
Dr. Hill, IMG, and Nurse Hahn filed an Exception of Prescription and, as stipulated by the parties, the trial court reviewed the documentary evidence in lieu of live testimony. The trial court granted the Exception of Prescription and dismissed Ms. Noe's claim as prescribed.
It is from this grant of the Exception of Prescription that Ms. Noe filed a timely appeal in this Court. We affirmed the judgment of the trial court. Subsequently, Appellant filed writs of certiorari to the Supreme Court of Louisiana which were granted.[1]

*1141 ANALYSIS

Standard of Review
An appellate court can only reverse a fact finder's determinations when: (1) it finds from the record that a reasonable factual basis does not exist for the findings of the trial court, and (2) it further determines that the record establishes the findings are manifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990); Aaron Banks, Jr. v. Industrial Roofing Sheet Metal Works, Inc. 96-2840 (La.7/1/97), 696 So.2d 551.
When the trial court's ruling on a peremptory exception is based on factual conclusions made after receiving evidence, the appellate court's standard of review is manifest error. In re Medical Review Panel for the Claim of Tammy Joyce Abbott v. Louisiana State University Medical Center-Shreveport, 35,693 (La.App. 2 Cir. 2/27/02) 811 So.2d 1107.

ASSIGNMENTS OF ERROR

First Assignment of Error
In appellant's initial assignment of error Mrs. Noe alleges that the trial court erred in finding that her medical malpractice action was prescribed when the claim was filed within three years of the initial negligent act and within one year of the discovery of the resultant harm and where actions of the defendant physician effectually prevented Mrs. Noe from availing herself of her medical malpractice action earlier.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Campo v. Correa, 01-2707, p. 7 (La.6/21/02), 828 So.2d 502, 508. However if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo, 01-2707 at 7, 828 So.2d at 508.
The prescriptive period for medical malpractice is provided LSA § 9:5628, which states:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The general prescriptive period which is applied in medical malpractice actions is one year; specifically in cases in which damages are immediately apparent. Brenda Sue Carter v. Gary Stephen Haygood, XXXX-XXXX (La.1/19/05), 892 So.2d *1142 1261. In cases where the damages are not immediately apparent, a statutory exception has been applied for the promotion of equity. This exception, also called the discovery exception, was codified as the fourth category of the larger prescription exception of contra non valentum. Contra non valentum, which translates to "prescription does not run against a person who could not bring his suit," allows a plaintiff to bring their medical malpractice claim after the one-year prescriptive period has passed if they fall within one of the four categories of the doctrine. Harvey v. Dixie Graphics, Inc. 593 So.2d 351, 354 (La.1992). The Supreme Court has recognized the four categories of contra non valentum as:
1. Where some legal cause prevented the court or their officers from taking cognizance of or acting on the plaintiff's action;
2. Where there was some condition coupled with a contract or connected with the proceeding which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
4. Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054-55 (La. 1987).
In the case sub judice, the portion of the contra non valentum doctrine at issue is the third category. The third category is limited in its application to those instances involving fraudulent concealment, misrepresentation, fraud and ill practices. In re Moses, 2000-2643 (La. 2001), 788 So.2d 1173, 1179. The Supreme Court's latest pronouncement on the issue of prescription addressed the third category of contra non valentum and its applicability in a case such as Ms. Noe's. "What we refer to as `the third category of contra non valentum' applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." Whitnell v. Menville, 540 So.2d 304, 308 (La.1989). The Supreme Court stated in Carter v. Haygood, XXXX-XXXX (La.1/19/05), 892 So.2d 1261, that "in certain circumstances, a doctor's continuing professional relationship with his patients might give rise to the suspension or interruption of prescription." Trainor v. Young, 561 So.2d 722, 726-27 (La.App. 2nd Cir.1990). This interruption or suspension of prescription by the continued existence of a professional relationship is based on the premise that the professional relationship is likely to hinder the patient's inclination to sue. Id. It is the continuation of the special relationship that offers the possibility of correction of the injury and thus may postpone the running of prescription. In re Medical Review Panel for Claim of Moses, 00-2643, p. 11 (La. 5/25/01), 788 So.2d 1173, 1178-79. Therefore, as long as the patient remains in the physician's care, she could reasonably expect a correction of the diagnosis or tortious treatment. Id.
Mrs. Noe asserts she had no knowledge, actual or constructive, that she suffered an injury resulting from the injection until she was diagnosed with nerve damage in May of 2002. In August 2001, Dr. Hill diagnosed her problem as an allergic reaction to Celestone and placed her on a one-year program of exercise in order to build the muscle in her buttock. She continued to believe and rely on the explanation provided by Dr. Hill, until he made a referral to a neurologist in April of 2002.
Ms. Noe and Dr. Hill had an ongoing physician-patient relationship, which did not begin with the administration of the *1143 Celestone injection in question. In 1998, Mrs. Noe selected Dr. Hill as her primary-care physician. Dr. Hill remained her primary throughout her pregnancy and up to the determination of the alleged negligence. This long-standing relationship prompted Ms. Noe to rely upon the medical diagnosis given by Dr. Hill and comply with the "one year program" in which he implemented. Following the implementation of this one-year program, Ms. Noe spoke with Dr. Hill several times to report an increase in the pain she was experiencing. She further asked Dr. Hill if he was positive he had made the correct diagnosis, to which he responded he was confident in his diagnosis and to remain on the program. Mrs. Noe asserts that the above referenced assurances misled her, causing her a delay in discovering that the injection resulted in damage.
Based upon the actions of Dr. Hill and the Supreme Court's pronouncement in Carter, we find that Dr. Hill's consistent and continuous relationship coupled with his reassurances of recovery and the implementation of the one year treatment program, thwarted Ms. Noe's inclination to bring suit and therefore prevented the claim from prescribing. The parties physician-patient relationship was longstanding, causing Ms. Noe to rely upon her physician's advice and trust in his diagnosis. As in Carter, Dr. Hill's actions led Ms. Noe to delay discovery of a cause of action based upon his continued treatment and attempts to remedy her injury. Ms. Noe's continued treatment with Dr. Hill falls squarely within the confines of the third exception of contra non valentum and; therefore prevents her claim against Dr. Hill from prescribing.

Second Assignment of Error
In her second assignment of error Ms. Noe asserts the trial court erred her in failing to allow her to amend her claim to assert separate causes of action for negligent or intentional misdiagnosis, continuing treatment, and breach of duty to refer her to a specialist.
Mrs. Noe further argues that the trial court committed legal error in failing to allow amendment of her complaint to state separate causes of action for negligent or intentional misdiagnosis, continuing treatment, and failure to make a proper referral to an appropriate specialist. In support of this contention, Mrs. Noe maintains that she asserted sufficient allegations before the trial court to support one or more of these separate causes of action and she, therefore, should have been allowed to amend her complaint.
Based upon this Court's conclusion that Ms. Noe's claim has not prescribed under the exception of contra non valentum, discussion of whether the trial court erred in failing to allow amendment of her pleadings is pretermitted.

DECREE
For the foregoing reason, we reverse the judgment of the trial court.
REVERSED.
NOTES
[1] The Supreme Court stated "The Court of Appeal's ruling is vacated and the case is remanded to the Court of Appeal to reconsider the prescription issue (1) in light of this Court's recent decision in Carter v. Haygood, 892 So.2d 1261 (La. 1/19/05) involving the application of the third category of contra non valentum, and (2) applying the correct date of March 27, 2002 as the date Ms. Noe visited Dr. Frank Wharton."