Judge Roland L. Belsome
Lin this medical malpractice case, Appellant, Kelli Wilkerson, appeals the judgment of the trial court, which sustained the exception of prescription filed by Dr. Denardo Dunham and dismissed Ms. Wilkerson’s claims with prejudice. For the reasons set forth herein, the trial court’s judgment is affirmed.
Statement of the Case
Ms. Wilkerson began treatment with Dr. Denardo Dunham in 2006 for a bunion on her right foot. Dr. Dunham performed three bunionectomy surgeries on Ms. Wilkerson between 2008 and 2010. Ms. Wilkerson continued to experience pain in her right foot following the surgeries. She scheduled appointments with a number of other podiatrists, who could not or would not treat her. She contacted Dr. Dunham again; howeyer, due to a leave of absence, he was unavailable to treat her. Dr. Dun-ham referred Ms. Wilkerson to Dr. Darren Vigee.
Ms. Wilkerson first visited Dr. Vigee in July 2011. At the appointment, Dr. Vigee took x-rays of Ms. Wilkerson’s right foot and advised her that too much bone had been shaved away during the bunionecto-my surgeries. In 2014, Dr. Vigee |aagain took x-rays of Ms. Wilkerson’s foot and reported similar findings. Dr. Vigee advised Ms. Wilkerson to follow up with Dr. Dunham since he performed the surgeries. Dr. Dunham informed her that the pain she was experiencing was a known complication with her procedure that would eventually heal, but advised her that another surgery could correct the complications she was having. He referred her .to an orthopedic surgeon who performed corrective surgery.
On October 23,2014, Ms. Wilkerson filed a medical malpractice complaint before the Patient Compensation Fund (“PCF”) against Dr. Vigee. She amended the complaint to substitute' Dr. Dunham as defendant on February 12, 2015, 'and amended her complaint again oh March 5,2015.[1] Ms. Wilkerson filed suit in Civil District Court against Dr. Dunham on April 7, 2015, prior to the PCF issuing an opinion. She voluntarily dismissed Dr. Vigee from the PCF complaint on May 4,2015.
Dr. Dunham filed an exception of prescription, requesting that all claims be dismissed as untimely. The court granted the exception and entered judgment, dismissing all claims with prejudice. The medical review panel was subsequently dissolved and the claim was dismissed from the PCF. This appeal followed.
On appeal, Ms. Wilkerson claims that the district court erred in sustaining Dr. Dunham’s exception of prescription on two grounds. First, she argues that she had an ongoing doctor-patient relationship and/or ongoing treatment with Dr. |3Punham, which suspended the prescriptive period applicable to her claim. Second, she argues that she did not discover that she had a malpractice claim against Dr. Dunham until June 2014, and thus a year had 'not passed between her obtaining knowledge of a cause of action arising and her filing the malpractice claim.
Prescriptive Period for a Medical Malpractice Claim
Ordinarily, the moVant bears the burden of proof at trial of the peremptory *746 exception of prescription.[2] “However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.”[3]
La. R.S. 9:5628 sets forth the prescriptive period within which a party must bring a medical malpractice claim.[4] It is a “hybrid statute, providing both a one-year prescriptive period, including an incorporation of. the discovery rule, and a three-year repose period; the latter repose rule acts to cut off the discovery rule incorporated into the former prescriptive period.” [5] The statute “not only limits the time following discovery during which the plaintiff must institute his action, but also sets an outer or overall limitation, one based on the length of the period | .following the negligent act, beyond which the action is barred, regardless of subsequent discovery.”[6]
In Campo v. Correa, the Louisiana Supreme Court made the following statement regarding prescription as to a medical malpractice claim:
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. ... Nevertheless, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. ... The ultimate issue is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct.[7]
Doctrine of Contra Non Valentum and Medical Malpractice Claims
In a medical malpractice case where damages are not immediately apparent, the doctrine of contra non valen-tum may allow a plaintiff to bring a claim after the prescriptive period has passed if one of four recognized categories applies.[8] *747 Ms. |fiWilkerson claims that two of those categories—the continuing treatment exception and the discovery rule—applied to suspend or to interrupt the running of prescription for her claim against Dr. Dun-ham.
Continuing Treatment Exception
Ms. Wilkerson maintains that the continuing treatment exception, which is the third recognized category of contra rum valentum, applied to suspend prescription for her medical malpractice claim against Dr. Dunham. She claims that she had an ongoing doctor-patient relationship, continuing treatment with Dr. Dunham from 2006 until June of 2014, or both. She further claims that Dr. Dunham’s reassurances that the pain she experienced after her surgeries was a normal, known complication prevented her from bringing a medical malpractice claim against him prior to June 2014.
In Carter v. Haygood, the Louisiana Supreme Court found that the continuing treatment exception of contra non va-lentum may be invoked to suspend the prescriptive period under La. R.S. 9:5628 where “an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.”[9] The Court further stated that prescription may be suspended or interrupted where the plaintiff has a continuing relationship with the physician because the plaintiff may be less inclined to sue where the doctor-patient ^relationship is ongoing.[10] In order for the continuing treatment exception to prescription to apply to a medical malpractice claim, the plaintiff must establish “(1) a continuing treatment relationship with the physician, which is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice.”[11]
Regarding Ms. Wilkerson’s assertions that she had an ongoing doctor-patient relationship with Dr. Dunham, the record indicates that her treatment with Dr. Dun-ham did not continue past November 2010. Dr. Dunham performed the first bunionec-tomy surgery on July 11, 2008; the second surgery on April 7, 2009; and the third surgery on June 4, 2010. Ms. Wilkerson also visited Dr. Dunham on November 22, 2010, which was the second to last appointment she had with him; she went to see him one final time on June 10, 2014.
Following her November 2010 appointment with Dr. Dunham, Ms. Wilkerson *748 continued to have pain in her foot and visited three different physicians. She testified that the other doctors either did not have the expertise to correct the prior surgeries or did not want to perform the corrective work. She further testified that she was told by at least one other physician that Dr. Dunham had shaved away so much of the bone in her right big toe that nothing could be done to correct the work.
[ 7After she could not find another physician to treat her, Ms. Wilkerson reached back out to Dr. Dunham to request a referral.[12] Dr. Dunham referred her to Dr. Vigee, whom she began seeing in July 2011. At the July 29, 2011 appointment, Dr. Vigee took an x-ray of her right foot; and like the previous physician, he informed her that too much bone had been shaved away during her bunionectomy surgeries. He further diagnosed her with severe degenerative joint disease and avas-cular necrosis in her big toe. She continued treatment with Dr. Vigee for the next few years; and on July 9, 2014, he took additional x-rays that showed the same results as those taken in 2011. The next day, on July 10, 2014, Ms. Wilkerson visited Dr. Dunham again to consult with him regarding the x-ray results. Subsequently, Dr. Dunham recommended Ms. Wilkerson see an orthopedic surgeon if she wished to have any further corrective surgeries. He referred her to Dr. Laborde,[13] who performed surgery on her right foot, removing a ligament from her leg and implanting it in her foot, which from all accounts alleviated the pain “tremendously.”
Ms. Wilkerson likens the facts of her case to those in another case, In re Noe, in which the Court found that prescription was suspended until the patient’s ongoing treatment relationship with her doctor terminated.[14] In Noe, the patient received a steroid injection for sinus congestion on June 11, 2001. Within one week of the injection, “a reddish-purple knot developed at the site of the injection.”[15] |sOn August 6, 2001, Mrs. Noe followed up with her doctor because she was suffering from pain, skin discoloration, and muscle atrophy at and surrounding the injection site; and he put her on a year-long, exercise-based recovery plan and informed her that the pain would resolve with time. On April 3, 2002, after Mrs. Noe’s pain had not alleviated, her doctor referred her to a neurologist and ordered a nerve conduction study and an MRI. The test results, received in May 2002, revealed that the injection had caused nerve damage.
Mrs. Noe filed a medical malpractice claim on March 12, 2003; and the defendant responded with an exception of prescription. The trial court granted the defendant’s exception of prescription on the basis that the claim was not brought within one year of the injection. On remand from the Louisiana Supreme Court, this Court reversed, finding that the continuing doctor-patient relationship coupled with his reassurances of recovery and his treatment plan “thwarted Ms. Noe’s inclination to bring suit and prevented the claim from prescribing.”[16] The Louisiana Supreme *749 Court affirmed, the decision, concluding that the doctor-patient relationship continued until at least April 3, 2002, the last time the patient saw her doctor when he referred her for the MRI; and thus that was the date prescription began to run.
In this case, unlike in Noe, the evidence does not support Ms. Wilkerson’s claim that the continuing treatment exception applied to suspend the running of | (prescription. The record does not indicate that her relationship with Dr. Dunham was continuous for the purposes of this exception to prescription. Rather, the record is clear that Ms. Wilkerson’s ongoing treatment relationship with Dr. Dunham did not continue past her November 2010 follow-up appointment. Instead, she began a new treatment relationship with Dr. Vigee in July 2011. Further, beyond a few assurances that Ms. Wilkerson’s pain from the surgeries was a normal complication that would abate with time, there is no indication in the record that Dr. Dunham engaged in conduct that prevented Ms. Wilkerson from bringing a claim against him. Therefore, the continuing treatment exception of contra non valentum did not serve to suspend the running of prescription for Ms. Wilkerson’s medical malpractice claim against Dr. Dunham.
Discovery Rule
Ms. Wilkerson also argues that the discovery rule of contra non valentum applied to suspend the running of prescription; however, the record does not support this contention. The discovery rule, which is encompassed in the fourth category of contra non valentum, provides that “prescription does not begin to run until plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant.”[17]
The record indicates that Ms. Wilkerson received knowledge of the excessive removal of bone in her right foot by at least July 29, 2011 when Dr. Vigee x-rayed her foot. Yet, her complaints regarding the procedures were not | infiled until October 23, 2014, over three years after she learned of the issues with her surgeries and over four years after the last surgery performed by Dr. Dunham, Therefore, the discovery rule of contra non valentum did not serve to suspend prescription under these circumstances.
Conclusion
For these reasons, we affirm the trial court’s judgment granting the peremptory exception of prescription and dismissing of Ms. Wilkerson’s claims against Dr. Dun-ham.
AFFIRMED

. When she initially substituted Dr. Dunham for Dr. Vigee, Ms, Wilkerson incorrectly identified him as Dr. Leonardo Dunham. She corrected his name to Dr. Denardo Dunham in the second amendment to the complaint.

. Campo v. Correa, 2001-2707, p. 7 (La. 6/21/02), 828 So.2d 502, 508.

. Id. (citing Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La. 1993)).

. La. R.S. 9:5628(A) provides:
A. No action for damages for injury or death against any physician ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

. In re Med. Review Panel for Claim of Moses, 2000-2643, p. 9 (La. 5/25/01), 788 So.2d 1173, 1179.

. Id., quoting 1 David W. Louissell & Harold Williams, Medical Malpractice ¶ 13.02[2][b] at 13-40 (1999).

. Campo v. Correa, 2001-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-11 (citations omitted).

. In re Noe, 2004-0760 (La.App. 4 Cir. 8/3/05), 916 So.2d 1138, 1141-42, writ granted sub nom. In re Med. Review Panel Proceedings of Noe, 2005-2275 (La. 4/17/06), 926 So.2d 497, *747 and aff'd in part, rev'd in part, 2005-2275 (La. 5/22/07), 958 So.2d 617. The four categories of contra non valentum that have been recognized include:
1. Where some legal cause prevented the court or their officers from taking cognizance of or acting on the plaintiff’s action;
2. Where there was some condition coupled with a contract or connected with the proceeding which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
4.Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

. Carter v. Haygood, 2004-0646, p. 12 (La. 1/19/05), 892 So.2d 1261, 1269 (citing Crump v. Sabine River Authority, 98-2326, p. 13 (La. 6/29/99), 737 So.2d 720, 730).

. Id.

. Id., p. 15, 892 So.2d at 1271.

. The record indicates that between August 2, 2011, and June 7, 2012, Dr. Dunham took a leave of absence from practicing medicine.

. Dr. Laborde’s first name is not included in the record.

. In re Noe, 2005-2275 (La. 5/22/07), 958 So.2d 617.

. In re Noe, 2004-0760, pp. 1-2 (La.App. 4 Cir. 8/3/05), 916 So.2d 1138, 1140, writ granted sub nom. In re Med. Review Panel Proceedings of Noe, 2005-2275 (La. 4/17/06), 926 So.2d 497, and aff'd in part, rev’d in part, 2005-2275 (La. 5/22/07), 958 So.2d 617.

. Id., p. 7, 916 So.2d at 1143.

. Fontenot v. ABC Ins. Co., 95-1707, p. 8 (La. 6/7/96), 674 So.2d 960, 964.